1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER L. TOBIN, as Administratrix of
the Estate of G. M. T., deceased, JENNIFER
L. TOBIN and CHRISTOPHER M. TOBIN,
individually and the marital community
composed thereof, and as the parents of I. T.,
their minor child,

Plaintiffs,

v.

THE STATE OF WASHINGTON, VICTOR
BERDECIA, in his individual capacity, and as
an employee of The State of Washington,
AMY CICHOWSKI, in her individual
capacity, and as an employee of The State of
Washington, MARY KAY QUINLAN, in her
individual capacity, and as an employee of The
State of Washington, EAVANNE
O'DONOGHUE, in her individual capacity,
and as an employee of The State of
Washington, and "JOHN DOE," and "JANE
DOE" 1-10, in their individual capacities, and
as an employees of The State of Washington,

Defendants.

Case No.  C06-5630RJB

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 41),

Defendants' Motion to Strike (Dkt. 61), Plaintiffs' Motion for Partial Summary Judgment Re:

Parental Liability/Immunity; Contributory and/or Comparative Fault of a Minor Below the Age of 6

ORDER
Page - 1

1    and Allocation of Fault Pursuant to RCW 4.22.070 (Dkt. 44), and Plaintiffs' Motion for Late Filing of

2    Exhibits #1-#4 of Declaration of Paul A. Lindenmuth re: Plaintiffs' Motion for Summary Judgment

3    Allocation of Fault to Lisa Fish (Dkt. 66).  The Court has considered the pleadings filed in support of

4    and in opposition to the motions and the file herein.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

6            This case involves the tragic drowning death of a child while at daycare.  Dkt. 1-3, at 11-37.

7    Pursuant to General Order fo the Court Regarding Public Access to Electronic Case Files (filed

8    5/29/03) this opinion will refer to the minor child as G. M. T.  The following relates the licensing

9    history of the in-home daycare where the child was on the day of the incident and the circumstances of

10   his death.

### A.    LICENSING OF THE DAYCARE

12           Parties agree that in 2001, Defendant Amy Cichowski, a former  Washington State Department

13   of Social and Health Services ("DSHS") employee, conducted an in-home daycare licensing inspection

14   of Lisa Fish's residence.  Dkt. 42, at 42-58.  The residence is located at 6408 South Island Drive,

15   Bonney Lake, Washington.  *Id.* at 42.  The back of the residence was fenced, and Fish was told that

16   extra fencing was required in order to become licensed.  Dkt. 59-8, at 51-52.  Fish installed the

17   additional fencing in the back.  *Id.*  The front yard is unfenced.  *Id.*, at 52.  Parties also do not dispute

18   that across the street and behind another row of homes is a body of water known as Lake Tapps.

19   Parties do not dispute that Lake Tapps is visible from the front porch of the Fish residence.  According

20   to Fish, she and Defendant Cichowski did not discuss fencing the front yard to prevent the children

21   from accessing Lake Tapps.  Dkt. 59-8, at 52.  On December 11, 2001, the proposed daycare was

22   given an in-home daycare license for the care of 6 children.  Dkt. 59-4, at 2.  Plaintiffs urge that the

23   daycare was not in compliance with then applicable Washington Administrative Code ("WAC") 388-

24   155-295(5) which provides, "[a] five foot high fence with gates, locked when not in use, is required to

25   prevent access to water hazards, such as swimming pools, lakes, streams, or natural or artificial

26   pools."

27           Parties also agree that in March of 2004, Defendant Victor Berdecia, also a Washington State

28   DSHS employee, conducted an inspection to determine if Fish's in-home daycare license should be

renewed. Dkt. 59-8, at 52. According to Fish, Defendant Berdecia told her that she had to keep the front door of the residence unlocked. *Id.* Fish's front door has a door knob, with no lock, a dead bolt, and a security screen door. *Id.* The record is unclear as to whether Fish was aware that G. M. T. was able to open the deadbolt prior to the incident. *Id.* at 52, 72, 81. Fish states that she and Defendant Berdecia did not discuss fencing the front yard to prevent the children from accessing Lake Taps. *Id.* at 63. Parties agree that Fish's license was renewed.

Parties agree that Defendant Mary Kay Quinlan was Defendant Cichowski and Berdecia's supervisor. Dkt. 59-11, at 28-29. Defendant Eavanne O'Donoghue is the supervisor of the Child Protective Services investigator, Ruben Reeves, who investigated G. M. T's death. Dkt. 59-11 at 5-8. This opinion will refer to Quinlan, Cichowski, Berdecia and O'Donoghue collectively, as the named Defendants.

### B.   G. M. T.'s DEATH

On July 13, 2004, G. M. T. was doing puzzles and watching television with two other children in the front room of the daycare. Dkt. 59-8, at 54. Fish left the front room and went into the backyard to address an altercation between two other children. *Id.*, at 55. She estimates that she was gone between five to ten minutes. *Id.* Fish stated that, despite Defendant Berdecia's requirements, she had the front door's deadbolt engaged (locked). *Id.* at 58. Parties do not dispute that G. M. T. (who was around two years old at the time) apparently left the Fish residence, crossed the unfenced front yard, crossed the street and the neighbor's yard, to Lake Tapps where he drowned. *Id.*, at 55-80. Lisa Fish voluntarily closed her day care. *Id.* at 49.

### C.   PROCEDURAL HISTORY

G. M. T.'s parents and sibling filed a Complaint in Pierce County Superior Court on October 10, 2006. *Id.* at 11-37. They make a: 1) negligence claim, 2) 42 U.S.C. § 1983 claim based upon a violation of their Substantive Due Process rights guaranteed by the Fifth and Fourteenth Amendment, 3) wrongful death claim pursuant to RCW 4.24.010, 4) 42 U.S.C. § 1983 claim based upon a wrongful death, and 5) an emotional distress claim. Dkt. 1-3, at 33-34.

Defendants removed this case on October 27, 2006, citing 28 U.S.C. §§ 1331 and 1343 as the basis for this Court's jurisdiction. Dkt. 1-1. Plaintiffs moved for an Order of Remand to Pierce

1    County Superior Court.  Dkt. 13-1.  Plaintiffs argued that pursuant to 28 U.S.C. § 1441(c), this Court

2    had discretion to remand the entire action if state law claims predominate.  Dkt. 11-1, at 6.  Plaintiffs

3    argued that although the "42 U.S.C. § 1983 claim is predicated on federal law, a substantial **amount**

4    **of the evidence will be predicated on an exploration of state, statutory, and regulatory law.**

5    Thus even though it is a federal claim, state law issues will predominate."  Dkt. 11-1, at 9 (*emphasis in*

6    *original*).  Plaintiffs alleged that two provisions of the WAC are implicated in the federal claim, WAC

7    388-155-295 (regarding water safety requirements for a daycare), and WAC 388.295-520(4)

8    (regarding monitoring at the entrances and exits of a daycare), and so the matter should be remanded.

9    Dkt. 11-1, at 3-5.  Plaintiffs' motion to remand was denied due to the 42 U.S.C. § 1983 claim.  Dkt.

10    17.

11          **D.**    **PENDING MOTIONS**

12         Defendants move for summary judgment on Plaintiffs' federal and state claims.  Dkt. 41.

13    Defendants argue that:  1) pursuant to the Eleventh Amendment they are immune from suit, 2)

14    Plaintiffs' § 1983 claim should be dismissed because no constitutional violation occurred, and even if it

15    did they are entitled to qualified immunity, 3) Plaintiffs' state law negligence claims should be

16    dismissed, and 4) Plaintiffs' state law outrage claim should be dismissed.  *Id.*  Plaintiffs' oppose the

17    motion, and as to their federal claims, argue: 1) their due process rights were violated and so their §

18    1983 claim should not be dismissed, 2) Defendants are not entitled to qualified immunity.  Dkt. 54.

19    Defendants reply, arguing that : 1) no constitutional violation occurred, and even if it did they are

20    entitled to qualified immunity, 2) there is no supervisor liability where there is no constitutional

21    violation.  Dkt. 61.  Plaintiffs oppose dismissal of their state law claims, arguing that:  1) the

22    negligence claims fall within a number of exceptions to the public duty doctrine, 2) Plaintiffs have valid

23    claims for negligent retention and supervision, and 3) Plaintiffs have a claim for reckless and/or

24    negligent infliction of emotional distress.  Dkt. 56.  Defendants reply, arguing that:  1) the public duty

25    doctrine precludes liability, 2) there is no claim for negligent supervision under these facts, and 3)

26    negligent infliction of emotional distress is not at issue here because this case is not based on the

27    common law.  Dkt. 60.

28         Defendants move to strike the Declarations of Plaintiffs' counsel, including all attachments.

1    Dkt. 61.  Plaintiffs filed a Surreply to Defendants' motions to strike, moving that the Declaration at

2    issue be treated as a statement of facts.  Dkt. 68.

3         Plaintiffs move for Partial Summary Judgment re: parental liability/immunity, contributory

4    and/or comparative fault of a minor below the age of 6, and allocation of fault pursuant to 4.22.070.

5    Dkt. 44.  Plaintiffs argue that: 1) under Washington law Christopher and Jennifer Tobin should be held

6    not to have caused or contributed to their son's death, 2) G. M. T. cannot be held liable for his own

7    death, and 3) Fish is not a party who can be assigned or apportioned fault. Dkt. 44-2.  Defendants

8    argue that:  1) Defendants do not have any intention of assigning any fault to Christopher Tobin,

9    Jennifer Tobin, or G. M. T., and 2) Fish is the "entity at fault" in G. M. T.'s death under 4.22.070.

10   Dkt. 51.  Plaintiff replies, 1) Lisa Fish's proportionate responsibility for G. M. T.'s death is, at most

11   slight, and 2) Fish is not an entity that can be taken into account for RCW 4.22.070 purposes due to

12   her bankruptcy.  Dkt. 63.

13        On October 22, 2007, Plaintiffs filed a Motion for Late Filing of Exhibits #1-#4 of Declaration

14   of Paul A. Lindenmuth re: Plaintiffs Motion for Summary Judgment Allocation of Fault to Lisa Fish.

15   Dkt. 66.

16                          **II.   DISCUSSION**

17   **A.    SUMMARY JUDGMENT STANDARD**

18        Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

19   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

20   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

21   The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a

22   sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

23   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of

24   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the

25   non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

26   (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical

27   doubt."); *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if

28   there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

1    the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

2    *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3        The determination of the existence of a material fact is often a close question.  The court must

4    consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

5    preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*,

6    809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving

7    party only when the facts specifically attested by that party contradict facts specifically attested by the

8    moving party.  The nonmoving party may not merely state that it will discredit the moving party's

9    evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec.*

10   *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in

11   affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497

12   U.S. 871, 888-89 (1990).

13        **B.    ELEVENTH AMENDMENT IMMUNITY**

14       Defendants first argue that pursuant to the Eleventh Amendment, the state, its agencies and

15   Defendants named in their official capacities have absolute immunity from suit for damages under 42

16   U.S.C. § 1983.  Dkt. 41, at 8.  Plaintiffs respond by conceding that the federal claims (42 U.S.C. §

17   1983 claims) can not be brought against the State, or its agencies.  Dkt. 54 at 2-3.  Plaintiffs argue that

18   in this case the § 1983 claims are being brought only against Defendants Berdecia, Cichowski,

19   Quinlan, and O'Donaghue in their personal and individual capacities. Dkt. 54, 2-3.  Plaintiffs properly

20   cite *Hydrick v. Hunter*, for the proposition that "the Eleventh Amendment does not bar damage suits

21   against state officials in their *personal* capacity."  *Hydrick v. Hunter*, 2007 WL 2445998 (9th Cir.

22   August 30, 2007)(*internal citations omitted*)(*emphasis in original*).  Accordingly, the Defendants

23   Motion for Summary Judgment for dismissal of the § 1983 claims against the individual Defendants

24   Berdecia, Cichowski, Quinlan, and O'Donaghue, in their personal and individual capacities, should not

25   be granted on this basis.

26       Moreover, when a State removes a case to federal court, the State waives its Eleventh

27   Amendment immunity from suit in federal court.  *Embury v. King,* 361 F.3d 562 (9th Cir. 2004).  The

28   waiver applies to both the state and federal claims.  *Id*.  Defendants here removed this action, and so

1    "voluntarily invoked the federal court's jurisdiction." *Id.* at 565.  Accordingly, Eleventh Amendment

2    immunity was waived.

3    **C.    QUALIFIED IMMUNITY FOR SECTION 1983 CLAIM**

4         "[G]overnment officials performing discretionary functions generally are shielded from liability

5    for civil damages insofar as their conduct does not violate clearly established statutory or

6    constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

7    U.S. 800, 818 (1982).  The immunity is "immunity from suit rather than a mere defense to liability."

8    *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

9         A private right of action does exist against government officials who, acting under the color of

10   state law, violate federal constitutional or statutory rights.  *Jackson v. City of Bremerton*, 268 F.3d

11   646, 650 (9th Cir. 2001) *citing* 42 U.S.C. § 1983.  A person can also be subject to §1983 liability for

12   the acts of others in limited circumstances.  "Although there is no pure *respondeat superior* liability

13   under §1983, a supervisor is liable for the constitutional violations of subordinates 'if the supervisor

14   participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"

15   *Hydrick* at 6 (*citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989)).  The Supreme Court has

16   established a two-part analysis for determining whether qualified immunity is appropriate in a suit

17   against an official for an alleged violation of a constitutional right.  *Boyd v. Benton County*, 374 F.3d

18   773, 778, (9th Cir. 2004) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court required to rule

19   upon qualified immunity must examine (1) whether the official violated the plaintiff's constitutional

20   rights on the facts alleged and (2) if there was a violation, whether the constitutional rights were

21   clearly established.  *Id.* (*internal citations omitted*).  As to the first inquiry, where "no constitutional

22   right would have been violated were the allegations established, there is no necessity for further

23   inquiries concerning qualified immunity." *Saucier* at 201.

24        1.    *Violation of Constitutional Rights*

25        Plaintiffs claim that the actions of the named Defendants were "deliberately indifferent to the

26   Plaintiffs' substantive due process rights to liberty, life, personal security, and bodily integrity."  Dkt.

27   1-3, at 33-34.  Plaintiffs argue that they have a cause of action against the individual Defendants

28   pursuant to § 1983 under the state created danger theory.  Dkt. 54, at 5.  In light of the extensive

briefing and argument advanced by Plaintiffs regarding their § 1983 claim, the Court will construe

these arguments as applying to both the § 1983 claims plead in the complaint.

It is well established that the Constitution protects a citizen's liberty interest in his own bodily

security from state action without the due process of law. *Kennedy v. City of Ridgefield,* 439 F.3d

1055, 1061 (9th Cir. 2006) (*citing Ingraham v. Wright,* 430 U.S. 651, 673-74, 97 S.Ct. 1401, 51

L.Ed.2d 711 (1977); *Wood v. Ostrander,* 879 F.2d 583, 589 (9th Cir.1989)).  However, "a State's

failure to protect an individual against private violence simply does not constitute a violation of the

Due Process Clause." *DeShaney v. Winnebago County Dept. of Soc. Serv.,* 489 U.S. 189, 197

(1989).

> Nothing in the language of the Due Process Clause itself requires the State to protect
> the life, liberty, and property of its citizens against invasion by private actors. The
> Clause is phrased as a limitation on the State's power to act, not as a guarantee of
> certain minimal levels of safety and security. It forbids the State itself to deprive
> individuals of life, liberty, or property without "due process of law," but its language
> cannot fairly be extended to impose an affirmative obligation on the State to ensure that
> those interests do not come to harm through other means.

*Id.* at 195.

An exception to this general rule is known as the state created danger exception.  The state's

failure to protect an individual against private violence can violate the guarantee of due process where

state action affirmatively places the plaintiff in a position of danger. *Kennedy* at 1061 (*citing*

*DeShaney* at 197). "That is, where state action creates or exposes an individual to a danger which he

or she would not have otherwise faced." *Id.*  In the Ninth Circuit, there are two elements in deciding

whether the state created danger exception applies: 1) danger affirmatively created due to state action

and 2) the state official's deliberate indifference to a known or obvious danger. *Id.*

a.     Danger Affirmatively Created Due to State Actions

In examining whether a governmental official affirmatively places an individual in danger, the

Court does not look solely to the agency of the individual, nor rest the decision on what options may

or may not have been available to the individual. *Id.* at 1062.  Instead, the question is whether the

official left the person in a situation that was more dangerous than the one in which they found him.

*Id.*  Here then, the issue is whether any affirmative action by Defendants Berdecia, Cichowski,

Quinlan, and/or  O'Donaghue placed G. M. T.  in a situation that was more dangerous than the one in

1    which they found him.  The undersigned concludes that there was none.

2          There is no Ninth Circuit authority which addresses a case similar to this one.  The Ninth

3    Circuit first considered the state created danger exception in *Wood v. Ostrander,* 879 F.2d 583 (9th

4    Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).  In *Wood*, a police

5    officer stopped a car, arrested the driver for drunk driving, impounded the car, and left the female

6    passenger stranded alone in a high crime area.  *Id.*  The passenger was raped.  *Id.*  The Ninth Circuit

7    found that a jury presented with the above could find that the police officer acted with deliberate

8    indifference to Wood's interest in personal security under the fourteenth amendment.  *Id.*  They have

9    subsequently found that plaintiffs alleged a triable danger creation claim in cases like *L.W. v. Grubbs,*

10   974 F.2d 119 (9th Cir.1992) (holding that state employees could be liable under the state created

11   danger exception for the rape of a registered nurse assigned to work alone in the medical clinic of a

12   medium security prison with a known, violent sex offender after being assured that she would never

13   work alone) and *Penilla v. City of Huntington Park,* 115 F.3d 707 (9th Cir.1997) (*per curiam*)(state

14   created danger exception claim viable where police officers who, after finding plaintiff in grave need of

15   medical care on his front porch, cancelled a 911 call for paramedics, put him back in his home, and

16   locked him inside).  The Ninth Circuit found in  *Munger v. City of Glasgow Police Dep't,* 227 F.3d

17   1082 (9th Cir. 2000) that police officers could be liable under the state created danger exception for

18   the hypothermia death of a visibly drunk patron dressed in a t-shirt and jeans after officers ejected him

19   from a bar on a bitterly cold night and told him not to drive anywhere.  Similarly, in *Kennedy v. City of*

20   *Ridgefield,* 439 F.3d 1055 (9th Cir. 2006) the Ninth Circuit held that a police officer acted with

21   deliberate indifference to an affirmatively created known danger to plaintiff.  In *Kennedy* the police

22   officer informed a known violent neighbor of plaintiff's allegations of child molestation without first

23   warning plaintiff as the officer had promised to do.  *Id.*  The officer also promised to patrol plaintiff's

24   neighborhood.  *Id.*  The Court held that the officer knew that telling the violent neighbor about the

25   allegations against him without warning the plaintiff placed her in a danger she otherwise would not

26   have faced.  *Id.* at 1064.  The neighbor shot the plaintiff and her husband that night.  *Id.*  In each of

27   these cases the state took an affirmative action to place the plaintiff in danger or enhanced the danger.

28          These cases stand in contrast to *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007) and

ORDER
Page - 9

*Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002). In *Johnson*, plaintiffs who were assaulted by members of a riotous crowd at a Mardi Gras celebration were held not to have a § 1983 claim under the state created danger theory against the city, mayor, and police chief. *Id*. Plaintiffs argued that the city officials' decision to switch from a more aggressive operation plan for crowd control to a more passive one was not affirmative conduct that placed the plaintiffs in danger. *Id.*, at 641. The Ninth Circuit noted that plaintiffs voluntarily attended the event. *Id*. The Court held that the governmental actors did not create the dangerous conditions or expose plaintiffs to a situation in which was more dangerous than the one they found them. *Id*. In *Ruiz,* the Tenth Circuit held that plaintiff failed to state a § 1983 substantive due process claim against state officials for the improper licensing of a daycare. *Id*. There state officials failed to conduct a criminal background check of the in-home daycare providers or confirm that they had the requisite insurance pursuant to state regulations. *Id*. The daycare providers had an extensive history of domestic violence and did not have insurance. *Id*. The plaintiff's child was beaten to death. *Id*. The Tenth Circuit held that the plaintiff "failed to allege either any pertinent affirmative conduct on the part of the State Defendants or any conduct that 'shocks the conscience,'" and so affirmed the District Court's dismissal of the complaint. *Id*. at 1183.

Here, as in *Johnson* and *Ruiz*, there is no evidence that the state took an affirmative action which placed G. M. T. in a situation that was more dangerous than the one in which they found him. The named Defendants did not require that G. M. T. attend Fish's daycare. The named Defendants did not take G. M. T. out of the custody of his parents and place him in the daycare. The only action taken by the above named Defendants was the decision to license and renew the license of the daycare which Plaintiffs contend was not in compliance with state regulations governing fencing for daycares. That action is simply not sufficient to prevail. *See Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002). As was the case in *Johnson* and *Ruiz*, here there was no affirmative state action: no involuntary exposure to harm as a result of a state actor's command. None of the state created danger theory cases, cited by either party or that have been found to state a claim in the Ninth Circuit, include a case where the state's affirmative conduct was the licensing of a facility which arguably was in violation of a regulation. Plaintiffs have failed to demonstrate any violation of their constitutional rights caused by the named Defendants' actions here.

1   /

2                  b.     Deliberate Indifference

3         The second issue the Court must decide is the related issue of whether the danger to which the

4   government officials exposed G. M. T. was known or obvious, and whether they acted with deliberate

5   indifference to it.  *Kennedy* at 1064.  There is no evidence in the record that the named Defendants

6   took affirmative action to expose G. M. T. to a known or obvious danger.  Accordingly, there is no

7   evidence in the record that any of the named Defendants acted with deliberate indifference.

8              2.     *Clearly Established Right*

9         Even if the named Defendants had created or enhanced a known or obvious danger to G. M. T.

10  by licensing the daycare, they are entitled to qualified immunity if the right violated was not clearly

11  established.  *Saucier* at 202.  As to the second inquiry in the qualified immunity analysis, if the law did

12  not put the official on notice that his conduct would be clearly unlawful, summary judgment based on

13  qualified immunity is appropriate.  *Saucier* at 202.  As stated above, there is no Ninth Circuit

14  precedent similar to this case.  Moreover, the Court notes that none of the parties cited a case for a

15  state created danger exception claim where the victim was injured by the <u>unintentional</u> acts of a third

16  party.  Although the Tenth Circuit requires that the state's affirmative conduct also "shock the

17  conscience," unlike in the Ninth Circuit, *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1064-1065

18  (9th Cir. 2006)(no requirement that the conscience of the federal judiciary be shocked in state created

19  danger cases), the named Defendants could have reasonably concluded pursuant to *Ruiz* that licensing

20  a daycare was not an "affirmative action" which could lead to a violation of the due process clause.

21  Even if Plaintiffs' constitutional rights were violated, Defendants Berdecia, Cichowski, Quinlan, and

22  O'Donaghue are shielded by qualified immunity from Plaintiffs' § 1983 claims.  Defendants' Motion

23  for Summary Judgment on Plaintiffs' § 1983 claims should be granted and Plaintiffs' § 1983 claims

24  should be dismissed.

25     **D.**    **STATE LAW CLAIMS AND ORDER TO SHOW CAUSE**

26        Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

27  jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law, (2) the

28  state claims substantially predominate over the claim which the district court has original jurisdiction,

1    (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional

2    circumstances, there are other compelling reasons for declining jurisdiction.  "While discretion to

3    decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one

4    of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and

5    comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations*

6    *omitted*).

7            Here, two of the four conditions in § 1367(c) are present.  As above, all Plaintiffs' federal

8    claims are dismissed by this order.  Accordingly, this Court has "dismissed all claims over which it has

9    original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over the

10   state law claims under § 1367(c)(3).  Moreover, the remaining state claims "raise novel or complex

11   issues of state law" under § 1367(c)(1).  For example, in order to determine whether Plaintiff's

12   negligence claims survive summary judgment, the undersigned would have to determine the proper

13   interpretation of WAC 388-155-295(5)(dealing with required fencing around daycares to prevent

14   access to water hazards).  A determination for which the state court is uniquely suited.  Accordingly,

15   the values of economy, convenience, and comity may well be served by this Court's declining to

16   exercise supplemental jurisdiction.  *See Acri* at 1001.  Additionally, this Court would have to decide

17   whether under Washington law, the state owed a duty to Plaintiffs.  *Taylor v. Stevens County,* 111

18   Wn.2d 159, 163 (1988).  Under the public duty doctrine in the state of Washington, "no liability may

19   be imposed for a public official's negligent conduct unless it is shown that 'the duty breached was

20   owed to the injured person as an individual and was not merely the breach of an obligation owed to the

21   public in general ( *i.e.,* a duty to all is a duty to no one).'"  *Id.*  Washington recognizes "four

22   exceptions to the public duty doctrine in which the governmental agency acquires a special duty of

23   care owed to a particular plaintiff or a limited class of potential plaintiffs.  These exceptions include (1)

24   legislative intent; (2) failure to enforce; (3) the rescue doctrine; and (4) a special relationship."

25   *Babcock v. Mason County Fire District,* 144 Wn.2d 774, 786 (2001).  Plaintiffs here argue that

26   several of these exceptions apply.  Dkt. 56.  A further determination of the exact contours of these

27   state specific exceptions would have to be made by the undersigned.  Because state courts have a

28   strong interest in enforcing their own laws, *See Carnegie-Mellon University v. Cohill,*484 U.S. 343,

352 (1988), the value of comity is served by this Court declining jurisdiction.  The value of fairness is also served by having the matter remanded.  The Court is aware that the Plaintiffs attempted to have the matter remanded, having already argued that the above determinations are best made in the state courts.  The values of economy, convenience, and fairness are well served by this Court's declining to exercise supplemental jurisdiction.

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the parties should be given an opportunity to be heard on whether the case should be remanded.  Parties should be ordered to show cause why the remaining state law claims should not be remanded to Pierce County Superior Court.  Parties' briefs, if any, are due November 8, 2007.  Parties briefs should not exceed three pages.  Consideration of the parties' responses to the Order to Show Cause should be noted for November 9, 2007.  In the meantime, Plaintiffs' Partial Motion for Summary Judgment (Dkt. 44), which is based entirely on state law, should be stricken, but may be renoted if the Court ultimately decides to exercise supplemental jurisdiction.  Additionally, the portion of Defendants' motion for summary judgment dealing with Plaintiff's state law claims (Dkt. 41) should be stricken, but may also be renoted if the Court ultimately decides to exercise supplemental jurisdiction.

### E.    MISCELLANEOUS MOTIONS

#### 1.    Defendant's Motion to Strike

Defendants' Motion to Strike (Dkt. 61) should be granted, in part, and denied, in part. Defendants move to strike the Declaration of Paul Lindenmuth Re: Factual Background in Opposition to Defendants' Motion for Summary Judgment (Dkt. 52) as it contains testimony and argument. Federal R. Civ. P. 56(e) provides that "[s]upporting and opposing affidavits shall be made on person knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The Declaration in question does appear to contain testimony in violation of the rule.  To the extent that there is testimony in the declaration, the testimony should be stricken.  Plaintiffs request that in light of the Court's granting of their motion to file an overlength brief, the Declaration be

treated as a statement of facts to the two memorandums submitted in response to the motion for summary judgment. Dkt. 68. The Court is now well aware of the door it opened when it entered the order permitting the overlength briefs without specifying a page limit. To the extent that the Declaration contains argument, which can be construed as a statement of facts, the motion to strike should be denied.

Defendants also move to strike admission of all the attachments to Paul Lindenmuth's Declarations (Dkts. 57, 58, and 59), arguing that many are irrelevant, are not properly authenticated and are hearsay. Dkt. 61, at 8. For the purposes of these motions only, Defendants' motion to strike the attachments should be granted, except for the attached deposition testimony. The remaining attachments were often not referenced in either parties' motions, and so not relevant under Federal Rule of Evidence 401. Many of the attachments were also unnecessary as several of the facts were agreed upon. Accordingly, the Defendants motion to strike should be granted, in part, and denied, in part.

        2.   <u>Plaintiff's Motion for Late Filing of Exhibits #1 through 4 of Declaration of Paul A. Lindenmuth Re: Plaintiffs' Motion for Summary Judgment /Allocation of Fault to Lisa Fish</u>

Plaintiff's motion for the late filing of exhibits (Dkt. 66) should be granted. It appears that a computer malfunction resulted in unintended consequences. The Court does note that the Declaration is in support of a summary judgment motion regarding a state law issue. In light of the fact that this Court is disinclined to exercise supplemental jurisdiction on the remaining state law claims, the motion may well be moot.

### III.     <u>ORDER</u>

Therefore, it is hereby **ORDERED** that,

- Defendants' Motion for Summary Judgment (Dkt. 41)is **GRANTED, in the following respect**: Plaintiffs' federal claims are dismissed; the portion of Defendants' motion for summary judgment dealing with Plaintiff's state law claims is stricken, but may be renoted if the Court ultimately decides to exercise supplemental jurisdiction,

- Defendants' Motion to Strike (Dkt. 61) is **GRANTED, IN PART, AND DENIED, IN PART**, as above,

- Plaintiffs' Motion for Partial Summary Judgment Re:  Parental Liability/Immunity; Contributory and/or Comparative Fault of a Minor Below the Age of 6 and Allocation of Fault Pursuant to RCW 4.22.070 (Dkt. 44) is **STRICKEN** but may be renoted if the Court ultimately decides to exercise supplemental jurisdiction,

- Motion for Late Filing of Exhibits #1through #4 of Declaration of Paul A. Lindenmuth re: Plaintiffs Motion for Summary Judgment Allocation of Fault to Lisa Fish (Dkt. 66) is **GRANTED**,

- Parties are further **ORDERED TO SHOW CAUSE, IF ANY THEY HAVE, WHY** the Court should not decline to exercise supplemental jurisdiction and remand the matter to Pierce County Superior Court.  Parties' briefs, if any, are due November 8, 2007.  Parties briefs shall not exceed three pages.  Consideration of the parties' responses to the Order to Show Cause shall be **NOTED** for November 9, 2007, and

- The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 5th  day of November, 2007.

ROBERT J. BRYAN
United States District Judge